**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Melvin FAGAN, Defendant–Appellant.**

**No. 93–3112.**

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1994.

Decided Sept. 22, 1994.

Cale J. Bradford (argued), Office of the U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Lorinda Meier Youngcourt (argued), Evans, Dowling & Youngcourt, Indianapolis, IN, for defendant-appellant.

Before ENGEL,* BAUER, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Melvin Fagan was convicted of conspiring to possess with the intent to distribute over five kilograms of cocaine, 21 U.S.C. § 841(a)(1), and of using and carrying a firearm during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1). He appeals his conviction. Finding no basis meriting reversal of his conviction, we affirm.

## I.

In November of 1991, Indianapolis police officers learned from sources that a man named James Steuber was trying to trade cocaine for marijuana. Working undercover, officers set up a deal with Steuber after which he was arrested. Steuber told police that he had been purchasing cocaine for his personal use from Fagan for five or six years. As part of an agreement with the police, Steuber agreed to participate in a controlled transaction with Fagan.

Steuber contacted Fagan and arranged for the deal to take place in the parking lot of the Preston Safeway in Indianapolis. Wear-

---

* The Honorable Albert J. Engel, United States Circuit Judge for the Sixth Circuit, is sitting by designation.

ing a concealed transmitting device, Steuber entered a white Lincoln Town car which Fagan was driving. Inside the car, Steuber observed a .38 caliber handgun underneath Fagan's leg. After Fagan showed Steuber the cocaine, Steuber signalled police officers to come in and make the arrest. Police searched Fagan and recovered the gun, one ounce of cocaine, and $673 in cash.

Shortly thereafter, the police once again crossed paths with Fagan, who had been released on bond and was awaiting further proceedings stemming from the earlier arrest. An investigation of narcotics dealers, Melvin Earls and his partner Robert Porter, led police officers, on December 12, 1991, to an Indianapolis flower shop. There, they witnessed Fagan and Earls leaving the flower shop and entering a pickup truck parked outside. Inside the truck, Fagan sold to Earls one kilogram of cocaine for $29,000. Fagan stashed the money in a saltine cracker box underneath the seat of the truck and returned to the flower shop. Earls returned to his vehicle. As he drove away, police officers arrested Earls and seized the cocaine from the back seat of his car. Meanwhile, officers still at the flower shop secured and searched the store. Five men, including Fagan, were in the shop. The police discovered two loaded firearms in the shop and later recovered from the pickup truck outside of the shop, a saltine cracker box containing $29,000.

As a result of these two incidents, a federal grand jury indicted Fagan on one count of conspiracy to possess with the intent to distribute over five kilograms of cocaine (count 1), 21 U.S.C. § 841(a)(1), one count of knowingly distributing one kilogram of cocaine within one thousand feet of a school (count 2), 21 U.S.C. § 845(a), and one count of using and carrying a firearm during and in relation to a drug trafficking crime (count 3). 18 U.S.C. § 924(c)(1). The government dropped count 2, and the case went to trial on counts 1 and 3. At trial, Earls testified that Fagan had first approached him in January of 1990 and offered to supply Earls cocaine on an ongoing basis. Earls agreed and began buying approximately five ounces a week from Fagan. Earls testified that Fagan occasionally "fronted" him the cocaine, meaning simply that Fagan sold Earls co-

caine with the understanding that Earls did not have to pay for it until he resold it. Then in May of 1991, Earls asked Fagan about increasing his purchases to kilogram increments because he was not making enough money selling ounces. Fagan responded that he would have to "talk to some people" and that he would get back to Earls. Soon thereafter, Earls made his first kilogram purchase at a price of $1,500. He purchased kilogram quantities from Fagan on three more occasions before he was arrested in December of 1991.

Fagan was convicted on both counts. He was sentenced to 235 months imprisonment on count 1 and sixty months imprisonment on count 3, with the terms to run consecutively. Fagan was also fined $2,000 and ordered to serve five years probation upon his release.

## II.

Fagan offers two reasons for the reversal of his conviction. First, he contends that the evidence failed to prove beyond a reasonable doubt that he was engaged in a conspiracy to possess and distribute cocaine. Alternatively, he claims that the jury was improperly instructed concerning its task in evaluating the evidence. For reasons discussed below, neither claim justifies reversal of the trial court's decision.

### A. Sufficiency of the Evidence

A defendant wishing to challenge the sufficiency of the evidence supporting his conviction faces a familiar and significant burden. Reviewing the evidence in a light most favorable to the government and drawing all reasonable inferences in favor of the government, we must determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Williams,* 31 F.3d 522, 525 (7th Cir.1994). We will not, in conducting our review, reweigh the credibility of evidence. *United States v. Maholias,* 985 F.2d 869, 874 (7th Cir.1993).

A conspiracy to distribute drugs is an agreement by two or more persons to distribute drugs. *United States v. Sergio,*

934 F.2d 875, 878 (7th Cir.1991). When the defendant is contesting his membership in a conspiracy, evidence of the defendant's connection to the agreement must be substantial. *United States v. Durrive,* 902 F.2d 1221, 1228 (7th Cir.1990). Fagan claims that although evidence was established showing that Earls had a well-organized distribution network, the government failed to show that Fagan conspired with anybody to distribute drugs. Fagan insists that the evidence established only that his relationships with Earls and Steuber were buyer-seller arrangements and that it did not show he entered into an agreement to distribute cocaine.

 While Fagan is correct in asserting that evidence of a buyer-seller relationship alone is insufficient to support a conspiracy conviction, *United States v. Townsend,* 924 F.2d 1385 (7th Cir.1991), Fagan's claim that this was all the evidence established is not accurate. Evidence of frequent and repeated transactions, especially when credit arrangements are made, can support a conspiracy conviction. *United States v. Dortch,* 5 F.3d 1056, 1065 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994); *United States v. Fort,* 998 F.2d 542, 546 (7th Cir.1993); *United States v. Edwards,* 945 F.2d 1387, 1398 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992); *Sergio,* 934 F.2d at 869. An ongoing relationship in which drugs are sold on credit suggests a level of cooperation and trust that is absent from the isolated and discrete transaction. Additionally, a credit transaction is evidence that the seller has an interest in the activities of the buyer.

In *Dortch,* we held that the jury was entitled to infer that the seller was part of the buyer's distribution conspiracy from evidence that the seller had sold cocaine to the same buyer on three occasions within a four to six month period with at least one of the transactions being done on credit. *Dortch,* 5 F.3d at 1065. In *Fort,* we held that the same inference could be drawn from one transaction and the promise of future deals. *Fort,* 998 F.2d at 546. Similarly, evidence that the seller in *Edwards* had repeated contact in person and over the phone with the buyer supported an inference that he was part of

the buyer's conspiracy. *Edwards,* 945 F.2d at 1399.

In light of these cases, it surely was not erroneous for the trial court to permit the jury to determine whether Fagan was a member of Earls's conspiracy from evidence that for nearly a year and a half, Earls purchased five ounces a week from Fagan and then in the six months preceding the arrest, he purchased a kilogram of cocaine on four separate occasions. Moreover, Earls's testimony concerning his conversation with Fagan about increasing the amount of his purchases could be construed to show that Fagan was aware of Earls's distribution. Earls testified:

> I had asked him about getting a kilo because I wasn't making enough money selling ounces, and he told me that he would have to talk to some people and he would get back to me.

Fagan argues that this testimony does not show that Earls informed Fagan of why he needed more cocaine. Rather, Fagan believes that by saying "because I wasn't making enough money selling ounces," Earls was merely telling the court why he approached Fagan.

We agree that it is ambiguous as to whether Earls told Fagan why he needed more cocaine. It was an ambiguity, however, which the jury resolved against Fagan after having an opportunity to view Earls. We are not in a position to contest this finding and, therefore, this testimony was additional evidence supporting Fagan's knowledge of Earls's distribution.

Finally, testimony by Earls and Steuber indicated that Fagan did not operate alone. Earls stated that at an earlier transaction at the same flower shop where Fagan was arrested, Fagan directed one man at the shop to be a lookout and directed a second man to retrieve the cocaine which was to be sold to Earls. Steuber testified that he sometimes arranged transactions through Fagan's brother Reggie. A jury could have reasonably inferred from this testimony as well as evidence that loaded firearms were kept in the flower shop, that Fagan was, with the help of his brother and others at the store,

maintaining a distribution network of his own.

In sum, we believe that there was sufficient evidence supporting Fagan's conspiracy conviction. The jury could reasonably have considered that his relationships with both Steuber and Earls were more involved and sophisticated than that of an isolated buyer-seller arrangement.

### B. Jury Instructions

Fagan claims alternatively that his conviction can be reversed because the trial court erred in instructing the jury about the law of conspiracy. He maintains that the instructions as given enabled the jury to convict him on the conspiracy count based solely on a single drug transaction.

 In reviewing challenges to jury instructions, we look at the charge as a whole and assess whether the jury was misled in any way as to the issues before it and as to its duty to determine those issues. *United States v. Boykins,* 9 F.3d 1278, 1285 (7th Cir.1993). Moreover, when as here, the party challenging the instructions did not object at trial, we review the challenge for plain error. Under the plain error standard, reversal is only appropriate to prevent a miscarriage of justice. *United States v. White,* 903 F.2d 457, 446–47 (7th Cir.1990).

 Fagan alleges there was nothing informing the jury that they had to find a crime separate from the cocaine sale. Though he did not tender any such instruction, Fagan contends that the jury should have been advised that to be convicted, the government had to prove that he knew of, and had an interest in, Earls's distribution of drugs.

Fagan's argument ignores the language contained in Instructions No. 24 and 25 which specifically inform the jury that the essence of a conspiracy is an agreement to commit a criminal act. Instruction No. 24 also states that "the government must prove beyond a reasonable doubt that a defendant was aware of the common purpose, and was a willing participant, with the intent to advance the purpose of the conspiracy." The instruction goes on to say:

> A person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not become a member. In addition, neither mere association with conspirators, nor knowledge that something illegal was going on, standing alone, will show that any particular defendant was a member of a conspiracy.

 The trial court's instructions represent accurate statements of the law. The instructions as given not only make it clear that it is the agreement to distribute narcotics which is the essence of a conspiracy (rather than the sale itself), but also admonish the jury that before convicting him they must find that the defendant knew of the conspiracy and intentionally acted to further its aims.

That a conspiracy to distribute drugs cannot be based on isolated narcotics transactions is axiomatic. In a discrete single buyer-single seller drug deal, the participants do not share the necessary intent to distribute drugs. The seller is distributing, the buyer is buying for his own purposes. The only goal they have in common is to consummate the criminal act without detection. Even if the buyer is redistributing the drugs he purchased, before the jury can find a conspiracy to distribute, they must find that the seller was aware of this purpose and was attempting to aid the buyer in this endeavor. The instructions in this case make this clear and in the presence of an accurate instruction on the elements of conspiracy, the trial court's failure to give an unrequested instruction on the significance of the isolated buyer-seller transaction was not plain error.

### III.

Because the evidence in support of his conviction was sufficient and because the jury was properly instructed on the elements of conspiracy, Melvin Fagan's conviction is

AFFIRMED.