**UNITED STATES OF AMERICA, Plaintiff–Appellee,**

v.

**Jose GONZALEZ–FLORES, Defendant–Appellant.**

**No. 02–1352.**

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 20, 2003.

Decided Aug. 20, 2003.

Carrie E. Hamilton, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Jose Gonzalez–Flores, pro se, Eden, TX, for Defendant–Appellant.

Before BAUER, KANNE, and EVANS, Circuit Judges.

## ORDER

A jury found Jose Gonzalez–Flores guilty of one count of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 846, 841(a)(1), three counts of distributing cocaine, *id.* § 841(a)(1), and one count of possession of cocaine with intent to distribute, *id.* § 841(a)(1). The district court imposed concurrent, 63–month prison terms on each count, and Gonzalez–Flores filed a timely notice of appeal. His appointed lawyer, however, now moves to withdraw on the ground that he cannot discern a nonfrivolous basis for appeal. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel's brief is facially adequate, and Gonzalez–Flores has not responded as he is permitted under Circuit Rule 51(b). We therefore limit our review to the potential issues discussed by counsel. *See United States v. Maeder,* 326 F.3d 892, 893 (7th Cir.2003); *United States v. Tabb,* 125 F.3d 583, 584 (7th Cir.1997). For the reasons set forth below, we grant counsel's motion to withdraw and dismiss the appeal.

Gonzalez–Flores' convictions stem from four sales he and co-defendant Pedro Garcia negotiated with a confidential informant in 2001. The first cocaine transaction occurred on April 25, 2001, when Garcia picked up a sample of cocaine from Gonzalez–Flores and passed it to the informant, Joel Trevino. After receiving the sample, Trevino arranged to purchase

250 grams from Garcia. Gonzalez–Flores provided the cocaine for the sale, but it was Garcia who delivered the drugs to Trevino. Trevino paid Garcia $5,500, and Garcia kept $300 while taking the remaining $5,200 to Gonzalez–Flores.

Trevino next contacted Garcia when he discovered that his purchase was 22 grams short. Garcia promised to correct the shortage after first checking with his "source," and later he invited Trevino to his house to pick up the missing cocaine. Trevino arrived there with undercover DEA agent Paul Munoz, and both men wore recording devices. Garcia told the pair to follow him because the cocaine was not at his house. He then led Trevino and Munoz to a house at 3057 S. St. Louis in Chicago, where Garcia was met by Gonzalez–Flores. The latter took Garcia behind the house and gave him the shorted 22 grams of cocaine, which Garcia then delivered to Trevino and Munoz. Munoz asked Garcia how much he would charge for kilogram quantities of cocaine, and Garcia said he would check. Garcia went back to the yard of 3057 S. St. Louis and talked to Gonzalez–Flores. Garcia ultimately returned and told Munoz that he could not quote him a price at that time.

In the days that followed, Garcia and Trevino continued to converse about another deal. During these recorded discussions, Garcia repeatedly referred to his "source," whom he identified at trial as Gonzalez–Flores. Garcia and Trevino ultimately set up the sale for May 15, 2001, at Garcia's workplace, but when Trevino and Munoz arrived, Garcia did not have the cocaine. Garcia left and went to meet Gonzalez–Flores and another dealer. Gonzalez–Flores told Garcia to have Trevino meet him at the corner of 51st Street and Washtenaw to pick up the drugs. Trevino and Munoz refused to go anywhere else to get the drugs, so the deal fell through.

On June 26, 2001, Garcia contacted Trevino and told him that he had one kilogram of cocaine for sale. The next day, Trevino inspected a sample and agreed to purchase the kilogram that same night at Garcia's house. Trevino and Munoz, who wore recording devices to the meeting, found Garcia and Gonzalez–Flores waiting out front when they arrived at Garcia's house. After Munoz and Garcia negotiated a price of the drugs, the four men headed for the basement where the cocaine was stored. On the way, Gonzalez–Flores asked Trevino about the money, and Trevino told him that it was in the trunk of Munoz's car. Once in the basement, Trevino asked if he could take the cocaine outside to the car, but Gonzalez–Flores told him that the kilogram should stay in the house. Gonzalez–Flores and Garcia were then arrested.

After his arrest Gonzalez–Flores was interviewed by DEA agents through a translator. Gonzalez–Flores signed a form to consent to search his residence, which he identified as 3057 S. St. Louis, and produced keys to that residence. Gonzalez–Flores initially denied knowledge of the drug deal, but later told the agents that "this was his first time doing this, that the only reason he did it was to get money for his sick mother."

Counsel first considers, in his *Anders* brief, whether Gonzalez–Flores could argue that the district court erred in denying his timely motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c). We review the denial of a motion for a judgment of acquittal *de novo*. *United States v. Fassnacht,* 332 F.3d 440, 447 (7th Cir.2003). In reviewing the district court's decision, we examine the "evidence in the light most favorable to the government and uphold a jury's decision if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v.*

*Albarran,* 233 F.3d 972, 975 (7th Cir.2000) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We will set aside a conviction only "when the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Griffin,* 310 F.3d 1017, 1021–22 (7th Cir.2002). " 'Proving that no such evidence exists presents a nearly insurmountable hurdle to the defendant.' " *Fassnacht,* 332 F.3d at 447 (quoting *United States v. Hach,* 162 F.3d 937, 942 (7th Cir.1998)).

To sustain a conspiracy conviction, the record must contain evidence showing that a conspiracy to distribute cocaine existed, and that Gonzalez–Flores knowingly joined it. *See* 21 U.S.C. § 846; *Hach,* 162 F.3d at 942. To convict for distributing cocaine, the government was required to show that Gonzalez–Flores delivered the cocaine, which means "the actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C. § 802(8), (11); *see United States v. Tingle,* 183 F.3d 719, 727 & n. 3 (7th Cir.1999). To convict Gonzalez–Flores of possession of cocaine with intent to distribute, the government had to prove beyond a reasonable doubt that he (1) knowingly possessed the cocaine and (2) intended to distribute it. 21 U.S.C. § 841(a)(1); *United States v. Starks,* 309 F.3d 1017, 1022 (7th Cir.2002).

■ In this case, the government's evidence at trial, viewed in the appropriate light, established the above factual account and thus proved each charged offense. Much of the government's case rested on the testimony of co-defendant Garcia, who recounted the ongoing agreement between himself and Gonzalez–Flores to market cocaine. Garcia testified that he received the cocaine from Gonzalez–Flores, who set the sales price. Garcia was cross-examined about his prior statements to the DEA denying involvement in selling cocaine, and he admitted lying in court about how he contacted Trevino. Although Garcia's testimony was inconsistent at times, a jury "is free to credit witnesses and resolve any inconsistencies in their testimony however it sees fit, and we will not disturb their credibility findings." *United States v. Hodges,* 315 F.3d 794, 799 (7th Cir.2003). The government corroborated Garcia with the testimony of Trevino and Munoz, as well as the recordings of the drug negotiations and purchases. And the government introduced Gonzalez–Flores's own post-arrest admission. Accordingly, we agree with counsel that it would be frivolous to argue that no rational trier of fact could have found Gonzalez–Flores guilty.

■ Counsel next considers whether Gonzalez–Flores could challenge the district court's refusal to depart downward under U.S.S.G. § 5K2.0 based on his status as a deportable alien. A judge may depart downward if the defendant's status as a deportable alien may lead to conditions of confinement substantially harsher than what the Sentencing Commission contemplated when it established the guideline sentencing ranges. *See United States v. Gallo–Vasquez,* 284 F.3d 780, 784 (7th Cir.2002). But we have jurisdiction to review a refusal to depart downward only if the district court erroneously believed that it lacked the discretion to depart. *United States v. Johnson,* 289 F.3d 1034, 1043 (7th Cir.2002). The district court denied the departure by saying, "I think actually it's probably not appropriate here, or at least I'm not going to exercise my discretion to give it, given what I have heard today." Thus, because the record shows that the district court understood its discretionary powers, any appeal premised on the refusal to depart would be frivolous.

■ Counsel also evaluates whether Gonzalez–Flores could assert that he re-

ceived ineffective assistance of counsel. But as counsel correctly notes, the record contains no evidence that Gonzalez–Flores' trial counsel provided inadequate representation. When Gonzalez–Flores told the district court that he thought his attorney had been ineffective, the court responded, "I haven't seen anything to indicate to me that he hasn't done his job as he should do it." If there is evidence outside of the record supporting such a claim, Gonzalez–Flores would need to present the argument in a collateral proceeding where the record can be more fully developed. *See United States v. Schuh,* 289 F.3d 968, 976 (7th Cir.2002). Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.