UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph A. KATALINICH, Defendant–
Appellant.

No. 96–2072.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1996.

Decided May 30, 1997.

1476

Before BAUER, WOOD, Jr. and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Joseph A. Katalinich of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. secs. 846 and 841(a)(1). The district court sentenced Katalinich to 132 months' imprisonment on Counts I and II, to be served concurrently. Katalinich was also ordered to forfeit $10,102 in United States currency and his 1972 Oldsmobile Cutlass, pursuant to 21 U.S.C. § 853. On appeal, Katalinich challenges the sufficiency of the evidence, the application of a sentence enhancement, the district court's selection of jury instructions, and the district court's admission and consideration of certain testimony at trial and sentencing.

## Background

In August 1994, Katalinich went to Harold Steskal's house in Springfield, Illinois and asked Steskal to purchase a quarter pound of marijuana for him. A few days later, Steskal brought Katalinich the marijuana, for which Katalinich paid $400. Katalinich then requested that Steskal get him some cocaine. About three weeks later, Katalinich called Steskal and asked for more marijuana, and Steskal obliged him. Katalinich made another request for cocaine. Another three weeks passed and in October 1995, Katalinich asked Steskal to get him half an ounce of cocaine. Katalinich asked that he be able to test the quality of the cocaine before he committed to buying larger amounts. Steskal obtained half an ounce of cocaine from his source, Leonard Carmean, and sold the cocaine to Katalinich for $700.

Katalinich's cocaine purchases soon increased in frequency. Steskal bought cocaine for Katalinich on at least four subsequent occasions. Steskal obtained the cocaine from Carmean, and either Carmean or Jamie Schlesinger, who worked for Carmean, delivered it to Steskal. In the fall of 1994, both Schlesinger and Carmean observed that Steskal had begun to purchase one ounce of cocaine at a time,

Estaban F. Sanchez, argued, Office of the United States Attorney, Springfield, IL, for plaintiff–appellee.

Michael J. Costello, argued, Springfield, IL, defendant–appellant.

instead of his usual half ounce. Katalinich began accompanying Steskal on some of these purchases, during which Steskal introduced Katalinich to Schlesinger and informed Katalinich that Carmean was his cocaine source.

In late January 1995, Katalinich asked Steskal to arrange a four-ounce cocaine purchase from Carmean. Steskal and Katalinich met Carmean and Joshua Cruickshank, another one of Carmean's underlings, in the parking lot of Bootlegger's Tavern in Springfield. After Steskal introduced Katalinich, Carmean instructed Cruickshank and Katalinich to conduct the deal in Carmean's car. Cruickshank entered the car and handed Katalinich four ounces of cocaine. Katalinich examined it and gave Cruickshank $4,400 in cash. Carmean suggested that Cruickshank give Carmean's pager number to Katalinich so that Katalinich could contact Carmean and his subordinates directly and avoid the hassle of having to buy through Steskal.

About a week after the deal at Bootlegger's, Katalinich began contacting Carmean's attendants directly. Specifically, Katalinich paged Schlesinger with the intention of buying half a kilogram of cocaine, stating that "his people" wanted greater quantities. Schlesinger could not fill Katalinich's order because he only had six ounces of cocaine available. Katalinich settled for the six ounces and paid Schlesinger $6,200. It was also about this time that Steskal became a weekly customer of Katalinich. Steskal routinely bought cocaine from Katalinich in one sixteenth-of-an-ounce quantities. In March and April of 1995, Carmean sold Katalinich four ounces and eight ounces of cocaine, respectively.

On May 3, 1995, Carmean began cooperating with law enforcement officials. Carmean called Katalinich several times, and the two discussed past and future drug deals. These recollections were recorded. On June 5, 1995, Carmean called Katalinich asking him if he wanted to buy some cocaine if Carmean managed to get some. Katalinich responded that he would if he was satisfied with its quality. Carmean reminded Katalinich that he had been pleased with a past purchase of powder cocaine. Katalinich recalled that it

was not so much that the cocaine was powder but that it was good quality. Carmean stated that he was getting rock cocaine this time around. Katalinich replied that rock cocaine was acceptable because "everyone thinks it's so cool, you know." Katalinich agreed to buy four to eight ounces of any kind of cocaine, depending on its quality.

On June 22, 1995, Carmean called Katalinich and the two agreed to meet the next day. On June 23, 1995, Carmean called Katalinich again and the two arranged to meet later that day. Katalinich asked Carmean how much cocaine he could get, and Carmean responded that he could give Katalinich eight ounces of powder cocaine. Katalinich asked that the cocaine be divided into two separate four-ounce packages. The two agreed to meet in the parking lot of a local Venture store. They also agreed to a price of $1,100 per ounce. In anticipation of the deal, law enforcement officials outfitted Carmean with a wire recorder and installed a video camera in his car.

Katalinich drove to the Venture in his 1972 Oldsmobile Cutlass. When he arrived, he exited his car, entered Carmean's car and told Carmean that he had heard rumors that Carmean was cooperating with law enforcement officials. Katalinich said that he was not concerned about the truth of these rumors so long as his dealings with Carmean continued to entail minimal conversation. Katalinich informed Carmean that Carmean was his only supplier and that Katalinich's only buyers were people he had known for at least ten years. Katalinich agreed to buy eight ounces of good quality cocaine at $1,100 an ounce.

Law enforcement officials immediately swooped in and arrested Katalinich. Task Force Agent Michael Bishop discovered two bundles of currency on the front passenger floor board of Katalinich's car. The money, totaling $10,000, was wrapped in paper towels. At the time of arrest, Katalinich also had $102 cash on his person.

Katalinich was indicted by a federal grand jury in Springfield. Count I charged that, beginning around December 1994 and continuing through at least June 1995, Katali-

nich and Steskal conspired with each other and others to distribute controlled substances, including cocaine, in violation of 21 U.S.C. secs. 846, 841(a)(1), and 841(b)(1)(A). Count II charged that, on or around June 23, 1995, Katalinich attempted to possess cocaine with intent to distribute in violation of 21 U.S.C. secs. 846, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. In Count III, the Government sought the forfeiture of the $10,102 in United States currency found in Katalinich's car and on his person and the forfeiture of Katalinich's 1972 Oldsmobile Cutlass, pursuant to 21 U.S.C. § 853. The Indictment charged that Katalinich intended to use or used both the cash and the car to facilitate the offense charged in Count II.

Before the jury trial, Katalinich filed a motion to exclude certain statements as hearsay. Katalinich argued that he was not a part of the conspiracy alleged in Count I. The Government countered by proffering evidence that the conspiracy existed and that Katalinich was a member. The district court found, as a preliminary matter, that the conspiracy existed, and it would allow the statements into evidence, subject to objection at trial. At trial, Katalinich renewed his objection. The district court overruled the objection and held that the Government had introduced enough evidence to establish the existence of the conspiracy and Katalinich's membership in it.

At the close of the Government's case, Katalinich moved for a judgment of acquittal on the grounds of insufficiency of the evidence. The district court denied the motion. Katalinich did not put on a defense. During the subsequent jury instruction conference, Katalinich asked the judge to give Defense Instruction No. 5, an instruction for multiple conspiracies. After hearing argument on the issue, the district court rejected Katalinich's proposed instruction, ruling that the evidence pointed to only one conspiracy.

The jury found Katalinich guilty of Counts I and II. The jury also determined that Katalinich should forfeit his interest in his car and the $10,102 cash recovered from the crime scene.

Katalinich was sentenced on April 23, 1996. At sentencing, Katalinich objected to the court's adding three criminal history points because of his earlier conviction for unlawful possession of a controlled substance. Katalinich contended that this conviction should not have been counted as part of his criminal history because the conviction was unconstitutional, as he was not represented by counsel at the time. The district court disagreed; it found that Katalinich was represented by counsel when he pleaded guilty to this earlier offense and that he chose to represent himself at sentencing. The court also rejected Katalinich's argument that his criminal history category significantly overstated the seriousness of his criminal history. The court denied Katalinich's motion for a downward departure.

The district court discounted Katalinich's objections to drug amounts that were attributed to him under relevant conduct. The court reasoned that the evidence at trial corresponded with the drug quantity noted in the Presentence Report and that the testimony of Steskal, Schlesinger, and Carmean was sufficiently reliable.

The district court sentenced Katalinich to 132 months' imprisonment on Counts I and II, to run concurrently, eight years of mandatory supervised release, and a $100 special assessment. Katalinich was also ordered to forfeit the $10,102 cash and his car. Katalinich appealed to this Court. He now argues: (1) that the evidence at trial was insufficient to sustain his conspiracy conviction; (2) that the district court's imposition of criminal history points for previous misdemeanor convictions was erroneous or unconstitutional; (3) that the district court committed error in refusing Katalinich's jury instructions for multiple conspiracies; (4) that the district court erred in admitting hearsay statements based on the assumption that they fell within the confines of Federal Rule of Evidence 801(d)(2)(E); and (5) that the district court erred at sentencing when it considered unreliable testimony in determining the amount of cocaine attributable to Katalinich.

## Analysis

### A. *Sufficiency of the Evidence.*

Katalinich contends that the Government did not present sufficient evidence to support

a conviction for conspiracy to distribute cocaine. Katalinich maintains that if there was a conspiracy, the evidence merely showed that he was a customer of the conspiracy who used Steskal as a "customer service man for himself." We disagree.

When faced with a sufficiency of the evidence claim, we review the evidence and draw all reasonable inferences that can be drawn therefrom in the light most favorable to the Government, and we will affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Godinez*, 110 F.3d 448, 452 (7th Cir.1997) (citations omitted). A conspiracy is "a confederation of two or more persons formed for the purpose of committing, by their joint effort, a criminal act." *United States v. Larkins*, 83 F.3d 162, 165 (7th Cir.1996). In order to sustain a conspiracy conviction, the Government must present substantial evidence that a conspiracy existed and the defendant agreed to join it. *Id.* (citations omitted). The Government may prove these elements through circumstantial evidence. *Id.* (citations omitted).

The Government must prove an agreement to commit a crime distinct from the mere purchase or sale of drugs. *United States v. Hall*, 109 F.3d 1227, 1232 (7th Cir. 1997). That agreement can consist of an implicit understanding that the drugs will be resold. *Id.* A jury may reasonably infer such an understanding from the relationship of the parties, their overt acts, and the totality of their conduct. *Larkins*, 83 F.3d at 166. "Routine sales for resale can create a mutual interest between buyer and seller in maintaining their continuing relationship that extends beyond the moment of each individual sale." *Hall*, 109 F.3d 1227, 1232 (citing *United States v. Clay*, 37 F.3d 338, 341 (7th Cir.1994)).

The evidence presented supports Katalinich's conspiracy conviction. Katalinich's cocaine purchases from Steskal began with a sample buy of half an ounce so that Katalinich could test the quality of the cocaine before he committed to buying larger amounts. Katalinich's purchases soon escalated in amount and frequency. Katalinich

began buying in one-ounce quantities and also began accompanying Steskal when Steskal went to his supplier, Carmean. By late January 1995, Katalinich had Steskal arrange for a meeting with Carmean, during which Katalinich was reintroduced to Carmean, who introduced Katalinich to Cruickshank. Carmean gave Katalinich his pager number so that Katalinich could contact Carmean and his underlings directly. At this meeting, Katalinich increased the quantity of cocaine he bought to four ounces per purchase.

Having ingratiated himself into the conspiracy, Katalinich began contacting Carmean and company directly. Proclaiming that his "people" wanted greater quantities, Katalinich wanted to buy one kilogram of cocaine from Schlesinger. Katalinich settled for six ounces because that was all that Schlesinger had available. Carmean sold Katalinich cocaine on two subsequent occasions, in four-ounce and eight-ounce quantities, respectively. We recall that "a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture is sufficient to sustain a finding of conspiracy." *Clay*, 37 F.3d at 341. From the scenario laid out above, there is ample evidence to infer that a conspiracy existed and that Katalinich knowingly agreed to join it.

### B. *Criminal History Points for Previous Misdemeanor Convictions.*

Katalinich objects to the court's adding three criminal history points for his earlier conviction for unlawful possession of a controlled substance. Katalinich contends that this conviction was unconstitutional because he was not represented by counsel at the time, and it therefore should not have been counted as part of his criminal history. The district court found that Katalinich was represented by counsel when he pleaded guilty to this earlier offense and that he knowingly and voluntarily chose to represent himself at sentencing.

Where a district court bases the application of a sentencing guideline on factual findings, we review for clear error. *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117

S.Ct. 1325, 137 L.Ed.2d 486 (1997). A factual determination is clearly erroneous only if, after consideration of all the evidence, the reviewing court is left with the firm conviction that a mistake has been made. *Id.* Under the Sixth Amendment, an indigent criminal defendant must be afforded the right to appointment of counsel when a sentence of incarceration is imposed. *United States v. Hoggard,* 61 F.3d 540, 542 (7th Cir.1995) (citing *Scott v. Illinois,* 440 U.S. 367, 374, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979)). However, this right may be waived. *Id.* (citations omitted).

■ Generally, courts are proscribed from increasing a sentence based on a conviction from a proceeding in which the defendant was denied the assistance of counsel. *United States v. Arango–Montoya,* 61 F.3d 1331, 1337 (7th Cir.1995) (citing *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 590, 30 L.Ed.2d 592 (1972)). Otherwise, the constitutional right to assistance of counsel is violated. However, in *Nichols v. United States,* the Supreme Court held that an uncounseled misdemeanor conviction for which the defendant did *not* receive a term of imprisonment could be relied upon to enhance the sentence for a subsequent offense, even if that sentence for the subsequent offense included incarceration. 511 U.S. 738, 746–47, 114 S.Ct. 1921, 1927–28, 128 L.Ed.2d 745 (1994).

Katalinich attempts to distinguish his case from Nichols by arguing that he *did* receive a term of imprisonment for an uncounseled misdemeanor conviction. This is the same misplaced distinction stressed by the defendant in *Hoggard. See Hoggard,* 61 F.3d at 543. In *Hoggard,* we stated that the fundamental premise of Nichols is that an earlier uncounseled misdemeanor conviction may be used to enhance punishment for a subsequent offense *if that earlier conviction was validly obtained. Id.* A prior uncounseled conviction is presumed to be constitutional, and the defendant has the burden of proving that the prior conviction was invalid. *Id.* at 542. A conviction may be validly obtained where the defendant knowingly and voluntarily waives counsel. *See id.*

■ Here, Katalinich was indeed entitled to representation given that he was sentenced to imprisonment. The district court found that Katalinich *was* represented by counsel when he pleaded guilty and that he knowingly waived his right to counsel at sentencing. That finding was not clearly erroneous. Thus, Katalinich's conviction, like those of the defendants in *Nichols* and *Hoggard,* was validly obtained and properly included in calculating his criminal history points.

■ In addition, Katalinich summarily concludes that the district court should have awarded him a downward departure because his criminal history category significantly over-represents the seriousness of his criminal history. *See* U.S.S.G. § 4A1.3. We, however, lack the jurisdiction to review the district court's refusal to depart downward in this case, as the district court exercised its discretion in the matter. *See United States v. Cureton,* 89 F.3d 469, 474 (7th Cir.1996).

C. *Jury Instruction for Multiple Conspiracies.*

■ Katalinich maintains that the district court erred when it refused his instruction for multiple conspiracies. Katalinich tendered the following instruction:

The defendant, Joseph Katalinich, is accused of agreeing with Harold Steskal, Leonard Carmean, James Schlesinger, and Joshua Cruickshank to commit the crime of conspiracy to distribute a substance or mixture containing cocaine. For you to find Joseph Katalinich guilty of the crime of conspiracy, you must be convinced beyond a reasonable doubt that he intentionally joined in that agreement to commit conspiracy to distribute a substance or mixture containing cocaine. It is not enough for you to believe that Joseph Katalinich agreed with other persons to commit some other crime. If you are not convinced beyond a reasonable doubt that Joseph Katalinich became a part of the agreement to commit the crime of conspiracy to distribute a substance or mixture containing cocaine, you must find him not guilty.

Rule 30 of the Federal Rules of Criminal Procedure sets out the requirements for pre-

serving an objection to a court's refusal of a proposed jury instruction for appeal. *United States v. Douglas,* 818 F.2d 1317, 1320 (7th Cir.1987). Merely submitting an instruction is not enough. *Id.* A defendant must object to the judge's refusal on the record and clearly state the reasons for his objection. *Id.* Otherwise, we will review a district court's refusal of a proposed jury instruction only for plain error. *Id.*

 In this case, the district court, finding no evidence of multiple conspiracies, rejected Katalinich's instruction. In response, Katalinich's counsel stated:

> I admit to the Court on facts that the Court has well stated, and is conscious of throughout this trial. My only suggestion might be that is you can take those facts and let a jury decide whether or not that's a multiple conspiracy. That's my argument to the Court, Your Honor.

We find that Katalinich's counsel sufficiently preserved the issue for appeal. Thus, our standard of review of the district court's refusal to give Katalinich's instruction is whether Katalinich was prejudiced by this refusal. *United States v. Grier,* 866 F.2d 908, 932 (7th Cir.1989) (citing *Hamling v. United States,* 418 U.S. 87, 134–35, 94 S.Ct. 2887, 2916–17, 41 L.Ed.2d 590 (1974)). District courts have substantial discretion in wording instructions, and when the instructions as a whole treat a case fairly and accurately, we will not disturb them on appeal. *United States v. Walker,* 25 F.3d 540, 546 (7th Cir.1994).

 A defendant is only entitled to an instruction on his theory of defense if: (1) the defendant proposed a correct statement of the law; (2) the evidence lends some support to the defendant's theory; (3) the defendant's theory of defense is not part of the charge; and (4) the failure to include the defendant's instruction would deny him a fair trial. *United States v. Douglas,* 818 F.2d 1317, 1320–21 (7th Cir.1987). At least two of these factors are absent in the case at hand.

 First, the evidence does not support a multiple conspiracy theory. Multiple conspiracies exist when there are separate agreements to effectuate distinct purposes.

*Walker,* 25 F.3d at 547. The evidence suggests that Carmean headed a conspiracy to distribute cocaine and that Katalinich became a member of this conspiracy and gradually came to deal directly with Carmean. Katalinich bought cocaine only from Carmean. In turn, Katalinich sold cocaine only to those people whom he had known for at least ten years. Katalinich presumably limited his customer base because he wanted customers he could trust and did not want the conspiracy's number of customers to swell beyond its control. Katalinich may also have limited his customers to trusted friends to lessen the chances of police infiltrating the conspiracy. Whatever his reasons, Katalinich was buying only from Carmean and his underlings and restricting his clientele, thereby doing his part to ensure the conspiracy's success. Katalinich's goals and those of his coconspirators remained one and the same.

Secondly, the failure to include a multiple conspiracy instruction did not deny Katalinich a fair trial. The district court gave an instruction which contained, in essence, the substance of our circuit's pattern instruction 5.11 on conspiracy. The district court instructed:

> To sustain the charge of conspiracy to distribute cocaine *as charged in Count I,* the government must prove the following propositions:
>
> first, that the alleged conspiracy existed; and
>
> second, that the defendant knowingly and intentionally became a member of the conspiracy.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.
>
> A conspiracy is a combination of two or more persons to accomplish an unlawful purpose. A conspiracy may be established even if its purpose was not accomplished.
>
> In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged

participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.

In determining whether the defendant became a member of the conspiracy you may consider *only the evidence concerning the acts and statements of the defendant.* In determining what the defendant's actions and statements were you may consider all of the evidence presented, including all the conduct and statements of the other alleged participants and all the circumstances of the case.

To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. The government must prove that the defendant was *aware of the common purpose and was a willing participant.*

(emphasis added). This instruction adequately informed the jury that it could only convict Katalinich of conspiracy if it concluded that he was a member of the conspiracy alleged in Count I and not a member of any other conspiracy. We have previously found instructions similar to 5.11 to be sufficient to admonish the jury that it can find the defendant guilty of *only* the charged conspiracy. *See Walker,* 25 F.3d at 547; *United States v. Auerbach,* 913 F.2d 407, 417 (7th Cir.1990); *United States v. Briscoe,* 896 F.2d 1476, 1513–14 (7th Cir.), *cert. denied,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990); *Grier,* 866 F.2d at 933. Katalinich's proposed instruction simply reiterates this point. We therefore find no prejudice resulting from the district court's refusal, and we do not believe that the refusal led to an unfair trial for Katalinich. The absence of at least two of the aforementioned *Douglas* factors means that Katalinich was not entitled to pose his theory of multiple conspiracies to the jury. The district court's refusal of Katalinich's proposed instruction was not error.

D. *The Admissibility of Coconspirator Statements.*

1. *Admission of certain statements pursuant to Federal Rule of Evidence 801(d)(2)(E).*

■■■ Federal Rule of Evidence 801(d)(2)(E) provides that a statement made by a coconspirator is not hearsay if the district court determines, by a preponderance of the evidence, that the declarant and the defendant were members of an existing conspiracy and that the statement was made during and in furtherance of that conspiracy. *United States v. Godinez,* 110 F.3d at 454 (7th Cir.1997) (citations omitted). We review the district court's admission of a coconspirator's statement under Federal Rule of Evidence 801(d)(2)(E) for clear error. *United States v. Mahkimetas,* 991 F.2d 379, 382 (7th Cir.1993). Katalinich contends that he received an unfair trial because the district court admitted certain hearsay statements which did not fit within the confines of Federal Rule of Evidence 801(d)(2)(E). He argues that these statements should not have been admitted because the evidence established that he was only a customer of the conspiracy, not a member.

In this case, the statements in issue were Steskal's remarks to Carmean concerning past drug debts and Steskal's role in introducing Carmean to Katalinich for purposes of conducting drug transactions. On appeal, Katalinich only argues that he was not a member of the conspiracy. He does not dispute that the statements admitted were made "during the course of and in furtherance of" the conspiracy. For the reasons stated above, we have already determined that a conspiracy existed and that Katalinich was a member. Therefore, we find no error in admitting these statements.

2. *The consideration of certain statements to establish the amount of drugs attributable to Katalinich for sentencing purposes.*

Katalinich maintains that coconspirator testimony regarding the amount of drugs attributable to Katalinich, as reflected in the Presentence Report and found to be correct by the district court, is unreliable evidence. He argues that Steskal's testimony was not reliable because Steskal had something to gain by his testimony and that his recollection was clouded because he was recalling events which took place while he was using

drugs. Katalinich believes that his purchase of six ounces of cocaine from Schlesinger should not be attributable to Katalinich because the only evidence of this transaction is Schlesinger's testimony. Finally, Katalinich contends that Carmean's testimony as to cocaine amounts attributable to Katalinich is not trustworthy.

A defendant has the due process right to be sentenced on the basis of accurate information. *United States v. Salinas,* 62 F.3d 855, 859 (7th Cir.1995) (citing *United States v. Mustread,* 42 F.3d 1097, 1101 (7th Cir.1994)). Nevertheless, there are few restrictions on the kind of information a court may consider in sentencing a defendant. *United States v. Musa,* 946 F.2d 1297, 1306 (7th Cir.1991) (citation omitted). A sentencing court may consider hearsay evidence. *Id.* (citation omitted). To succeed in challenging a sentence, a defendant must demonstrate that the information before the court was inaccurate and that the court relied on this inaccurate information. *Id.* (citing *United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir.1984)).

At sentencing, the district court essentially presided over a credibility contest. The shortcoming in Katalinich's argument is that he cannot show that the court relied on inaccurate information when it sentenced him. He disputes the reliability and credibility of the coconspirator statements, but offers no contrary evidence. The district court had an opportunity to hear and observe Steskal, Schlesinger, and Carmean at trial. It found Steskal's testimony to be reliable because he was able to recall details surrounding the transactions. As to the testimony of both Steskal and Schlesinger, the district court recalled that at sentencing, the testimony of one witness, even one biased against the defendant, is sufficient to support a finding of fact. See *United States v. Lindsey,* 30 F.3d 68, 70–71 (7th Cir.), *cert. denied,* 513 U.S. 1029, 115 S.Ct. 604, 130 L.Ed.2d 515 (1994). As to Carmean, the court remarked that, after reading the trial transcript and recalling the circumstances surrounding Carmean's transactions with Katalinich, it found Carmean's testimony to be sufficiently reliable. The district court's findings of fact and credibility are sufficiently supported by the record. We see no reason to disturb them.

## Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.