UNITED STATES of America,
Plaintiff–Appellee,

v.

Norman KOSTER, Defendant–Appellant.

No. 98–1695.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1998.

Decided Dec. 16, 1998.

Keith C. Syfert, (argued), Office of the United States Attorney, Rockford, IL, for Plaintiff–Appellee.

Thomas O. Meyer, (argued), Meyer & Horning, Rockford, IL, for Defendant–Appellant.

Before BAUER, MANION, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

On January 21, 1997, a federal grand jury returned a thirty-count indictment against Norman Koster, stemming from his scheme to defraud the Commodity Credit Corporation (the "CCC"), a government corporation created to fund various federal farm programs. Specifically, the indictment charged Koster with nine counts of making false statements to the CCC in violation of 15 U.S.C. § 714m(a); ten counts of mail fraud, in violation of 18 U.S.C. § 1341; six counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); four counts of causing the interstate transportation of a security obtained by fraud, in violation of 18 U.S.C. § 2314; and one count seeking criminal forfeiture of certain property, in violation of 18 U.S.C. § 982(b)(1)(A). Koster's jury trial on all counts except for the criminal forfeiture count began on October 27, 1997 and lasted seven days. On November 4, the jury returned its verdict, finding Koster guilty on all counts. As to the criminal forfeiture count, Koster waived his right to a jury trial and stipulated to the forfeiture of over $ 700,000.

On appeal, Koster argues that the trial court erred by refusing to instruct the jury on his defense theory that he acted in good faith in compliance with government regulations and relied on the approval of the government. We affirm.

## I. BACKGROUND

### A. The CCC

The CCC is a government corporation created to finance federal farm programs with monies appropriated by Congress. The federal farm programs financed by the CCC are administered by the Agricultural Stabilization and Conservation Service (the "ASCS"), an agency of the United States Department of Agriculture. The Set Aside Program is one of the principal programs administered by ASCS. Under the Set Aside Program, a farmer can volunteer not to produce crops on a certain percentage of his land, and, in return, that farmer receives financial compensation from the CCC in the form of a "deficiency payment." If enrolled in the Set Aside Program, a farmer also can participate in the Farm Stored Loan Program and receive low-interest loans from the CCC using the farmer's grain crop as collateral.

To participate in the Set Aside Program, and the Farm Stored Loan Program, a farmer must complete a series of applications— which, as it turns out, is the central focus of Koster's conviction. As part of the application process, each farmer must execute two forms: a contract to participate in the Set Aside Program (the "Contract") and a Farm Operating Plan (the "Plan"). A Contract contains a basic description of a specific farm, including the acreage being farmed, the crop being grown, and the number of farmers participating and their respective percentage share of the crop—provided that the farmers sharing in the crop are persons qualified to participate in the Set Aside Program.

A Plan requires the farmer to describe that farmer's business, including the particular land to be farmed; whether the land is owned or leased; and if leased, how the lease is paid; the sources of capital and equipment used in the farming operation; and the portion of the labor and management personally provided or hired. On the final page of each Plan, the farmer must certify that all the information in the Plan is accurate. The certification admonishes that "furnishing incorrect information will result in forfeiture of payments and the assessment of a penalty."

Once the farmer submits a Contract and a Plan, the ASCS reviews the documents to determine whether that farmer is eligible for the Set Aside and Farm Stored Loan programs. As part of determining whether a particular farmer is eligible, the ASCS must conclude that the farmer is "actively engaged in the farming business." In making this conclusion, the ASCS relies heavily on the farmer's representations in the Contract and the Plan. If the ASCS determines that the farmer meets the requirements then the

farmer is enrolled in the Set Aside Program and begins receiving deficiency payments, thus becoming eligible to apply for Farm Stored Loans.

Deficiency payments are capped at $50,000 per year for each farmer. If it is determined that two or more farmers are, in fact, the same farmer for purposes of the Set Aside program, those farmers are restricted to a single $50,000 deficiency payment. Additionally, the ASCS can withhold deficiency payments and apply them to delinquent debts owed by the farmer to the CCC. This process is known as a "set-off."

### B. Koster's Attempt to Defraud the CCC

In 1979, Koster began farming in a rural area near Dixon, Illinois. Koster's farming operation consisted of land that he owned and land that he leased. To finance his farming operation, Koster borrowed money from the CCC, totaling approximately one million dollars. In 1984, Koster defaulted on these loans.

The indictment charged that, from approximately February 1990 to March 1995, Koster engaged in a scheme to obtain deficiency payments and Farm Stored Loans while avoiding set-offs by inducing two ineligible individuals, Jerome Lauer and Joseph Michlig, and one ineligible entity, 4–D Farms, Inc., to fraudulently enroll in the government funded programs and pay him the proceeds they received.

Jerome Lauer was Koster's hired hand from mid–1985 through late–1993. Koster paid Lauer cash wages to assist him on portions of his leased farmland. In 1990, however, Koster devised a plan to use Lauer as a straw man to receive additional deficiency payments and Farm Stored Loan disbursements. That same year, Koster personally prepared a Plan and Contract for the 1990 Set Aside Program. Koster had Lauer sign both the Plan and Contract in Lauer's own name and submit the documents to the ASCS office. Relying on the validity of the information submitted in these documents, the ASCS enrolled Lauer in the Set Aside Program and began sending Lauer deficiency payments and Farm Stored Loan disbursements, which Lauer then turned over to Koster.

Had the ASCS known that Koster, and not Lauer, actually was renting the farmland, Lauer would not have qualified as an eligible individual for these government funded programs. Koster resubmitted Plans in Lauer's name, and continued receiving deficiency payments and Farm Stored Loan disbursements for several years.

Joseph Michlig was another straw man Koster used to defraud the ASCS. Michlig worked on Koster's farms from approximately 1985 to 1988. Between 1989 and 1993, after Michlig no longer worked for Koster, Koster enrolled Michlig in the Set Aside Program and Farm Stored Loan Program. In the Contract and Plan submitted to the ASCS, Koster represented that Michlig was leasing four different farms from three different landowners. In actuality, Michlig did not lease any of this land and thus would not have been eligible for the federally funded programs. Additionally, Koster represented in the Plan that Michlig farmed this land with equipment Koster owned or leased from Michlig's father. In reality, Michlig contributed no equipment, management, or labor to Koster's farming operation during this time frame.

From approximately 1989 to 1990, at Koster's direction, Michlig and his wife received the deficiency payments and Farm Stored Loan disbursements and deposited these funds into a bank account. Michlig and his wife then issued personal checks to Koster in the amounts of the payments. Beginning in 1991, Koster stopped receiving checks from the Michligs and instead directed them to make disbursements to parties Koster specified.

Koster also used 4–D Farms, Inc. as a straw corporation to defraud the CCC. 4–D Farms owned approximately 840 acres of farmland in Whiteside and Lee Counties. Glen Moody, a professional farm manager, acted on behalf of 4–D Farms in negotiating leases. According to Moody, Koster personally leased the 840 acres of land between 1989 and 1993 on a cash-rent basis—meaning that Koster agreed to pay 4–D Farms a specific amount of rent per acre, regardless of whether Koster made a profit from farming that land. Because the land was cash-

rented to Koster, 4–D Farms did not meet the requirements for participation in the Set Aside Program. Koster, however, submitted a Plan and Contract to the ASCS, representing that this land was leased to other persons, including Lauer and Michlig. Koster also represented that the land was rented on a crop-share basis, and therefore was eligible for deficiency payments. Based on these representations, 4–D Farms' application was approved and 4–D Farms was enrolled in the federally funded programs. It received deficiency payments between 1989 and 1993.

At trial, Koster's theory of defense was that he did not engage in any scheme to defraud the ASCS and that all the representations made in the Plans and Contracts submitted to the ASCS regarding Lauer, Michlig, and 4–D Farms were true. Koster also maintained that all his actions were taken in good faith to maintain the viability of his farming operation. Accordingly, at the end of the evidence, Koster tendered two good faith jury instructions to the trial court: one for the false statement charges and the second one for the mail fraud charges. The district court refused to give either instruction. Koster now appeals that decision.

## II. Discussion

■ A defendant is entitled to an instruction on his theory of the case if: (1) the proffered instruction is a correct statement of the law; (2) the theory of defense is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include the instruction would deny the defendant a fair trial. *United States v. Wilson*, 134 F.3d 855, 864 (7th Cir.1998); *United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir.1993). In reviewing a district court's decision not to give proposed jury instruction, we consider whether the defendant was prejudiced by the refusal. *United States v. Katalinich*, 113 F.3d 1475, 1482 (7th Cir. 1997). When the instructions as a whole treat a case fairly and accurately, we will not disturb them on appeal. *Id.* "We defer to the substantial discretion of the district court for the specific wording of the instructions, and in rejecting a proposed instruction, so long as the essential points are covered by the instructions given." *United States v.*

*Scott*, 19 F.3d 1238, 1245 (7th Cir.1994) (internal quotations omitted).

■ In the immediate case, we need not discuss all four of the requirements, as set forth in *Wilson*, to determine whether the trial court improperly refused to give Koster's jury instruction. Rather, a discussion of the third and fourth elements leads us to the inescapable conclusion that the trial court properly denied Koster's proposed good faith jury instructions. To prevail on the third element, whether the theory of defense is not already part of the charge, Koster must show that the instructions given did not adequately express his theory of defense. *United States v. Brimberry*, 961 F.2d 1286, 1291 (7th Cir. 1992); *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987).

Here, the district court gave other instructions that contained, in essence, the substance of Koster's proposed good faith instructions. Specifically, the district court gave the following instructions, regarding the multiple charges of mail fraud:

First, that the defendant *knowingly devised a scheme* to defraud as described in the indictment;

Second, that for the purpose of carrying out the scheme or attempting to do so, the defendant used the United States mails or caused the United States mails to be used in the manner charged in the particular count; and

Third, that the defendant did so *knowingly* and with the *intent to defraud*;

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

As used in this case, a scheme means some plan or course of action intended to deceive the Commodity Credit Corporation (CCC) and to deprive it of something of value by means of false pretenses, representations, or promises.

Although it is not necessary that the government prove all of the false pretenses, representations, promises, and acts charged in the portion of the indictment describing the scheme, it is essential that one or more of them be proved beyond a reasonable doubt establishing the existence of the scheme to defraud.

As used in this case, the phrase "intent to defraud" means that the acts charged were done knowingly with the intent to deceive the Commodity Credit Corporation in order to cause the loss of money or a financial gain to the defendant.

Govt. Sug. Jury Instr. No. 18, 21–22 (emphasis supplied). The district court also gave the following instructions regarding the multiple charges of making false statements:

To establish the offense of making a false statement . . ., the government must prove the following propositions:

First, the defendant made a false statement;

Second, the statement was material;

Third, the statement was made *knowingly*; and

Fourth, the statement was made for the purpose of influencing the Commodity Credit Corporation or for obtaining money disbursed by the Commodity Credit Corporation.

If you find from your consideration of all of the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

A statement is false if untrue when made and then known to be untrue by the person making it or causing it to be made.

Govt. Sug. Jury Instr. No. 27–28 (emphasis supplied).

■ The district court denied both of Koster's good faith defense instructions, concluding that the "knowledge" element of the mail fraud and false statement charges encompassed any good faith defense. We agree with the district court's conclusion. An action taken in good faith is the other side of an action taken knowingly. *United States v. Schwartz*, 787 F.2d 257, 265 (7th Cir.1986); *cf. Brimberry*, 961 F.2d at 1291 (holding that the district court's instructions requiring the jury to find that the defendant acted "willfully" to convict on income tax evasion necessarily encompassed the defendant's theory on good faith reliance).

On the mail fraud charges, the district court's instructions required the jury to find: (1) that Koster "knowingly devised a scheme" and (2) that Koster acted with "intent to defraud." On the making false statement charges, the instructions required the jury to find that Koster "knowingly" made a false statement. Taking together the jury instructions that were given, the jury could not have found that Koster knowingly committed mail fraud and/or knowingly made false statements to the CCC and yet simultaneously have found that Koster acted in good faith. Thus, even without a separate instruction, we believe that the jury was given a sufficient opportunity to consider whether Koster acted in good faith. *Schwartz*, 787 F.2d at 265. Accordingly, Koster's theory of defense was already part of the district court's charge. And for the same reasons, we also find that the district court's refusal to give Koster's good faith instruction did not deny him a fair trial.

AFFIRMED.