In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3458

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ODIN D. PAYNE,

Defendant-Appellant.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98 CR 103--Rudolph T. Randa, Judge.


Argued April 14, 2000--Decided September 1, 2000


  Before POSNER, RIPPLE, and ROVNER, Circuit Judges.

  ROVNER, Circuit Judge.  On June 16, 1998, a grand
jury indicted Odin D. Payne and three others on
charges of conspiracy to manufacture and
distribute marijuana and money laundering. The
other defendants, Chad Nelson, Mike Salinas and
Eli Colon-Rivera, pled guilty to some of the
charges. Payne proceeded to trial, and was
convicted of the drug conspiracy count under 21
U.S.C. sec.sec. 841(a)(1) & 846, but acquitted on
the money laundering counts. He appeals his drug
conspiracy conviction, alleging that the evidence
demonstrated the possibility of multiple
conspiracies and the court failed to provide a
proper instruction, and that the court erred in
calculating his sentence.

  The trial testimony established an extensive
conspiracy to acquire and distribute marijuana.
Payne used various other persons during the
conspiracy to obtain, store, and distribute
marijuana in the Milwaukee area at his direction.
To maximize profits, Payne sought alternately to
obtain marijuana at lower prices and to obtain
higher-quality marijuana that would command a
higher resale price. He thus traveled, or sent
others, to Texas and California to obtain
marijuana at lower prices, and also obtained
higher-quality marijuana from sources in
Minnesota. The "home-grown" marijuana from
Minnesota proved so profitable that Payne decided

to establish his own growing operation in an attempt to duplicate the quality. Nelson was the appointed horticulturist. He initially had established a growing operation in an attic, but later Payne with others located a warehouse which they leased to begin a larger scale marijuana crop. They purchased 2000 pots for cultivating marijuana plants, and began construction of the growing lights and other requirements of a successful operation. The government raided the site before the actual plants were introduced.

I.

Payne asserts that the evidence at trial established multiple conspiracies rather than the one charged in the indictment, and therefore caused a prejudicial variance between the allegations in the indictment and the proof at trial. He further contends that the district court erred in refusing his multiple conspiracy jury instruction. We review first his claim that the court erred in refusing to give his proffered jury instruction.

A defendant is entitled to an instruction on his theory of defense only if: (1) the proffered instruction is a correct statement of the law; (2) the defendant's theory is supported by the evidence; (3) the asserted defense theory is not already part of the charge; and (4) the failure to include the instruction on the defendant's theory would deny him a fair trial. United States v. Wilson, 134 F.3d 855, 864 (7th Cir. 1998). Payne's proposed instruction fails the first prong in that it was not a correct statement of the law. The instruction required the jury to acquit if it found that the conspiracy to which Payne was a party varied from the conspiracy charged in the indictment:

If you find that a particular defendant was a member of a separate conspiracy other than the conspiracy charged in the indictment and do not find beyond a reasonable doubt that such defendant was a member of the conspiracy charged in the indictment, then you must acquit the defendant.
In other words, to find a defendant guilty of the conspiracy charge, you must find beyond a reasonable doubt that he was a member of the conspiracy charged in the indictment, not some other conspiracy.

In Wilson, we held that a nearly identical instruction was erroneous and should not be given. Id. at 864-65. As in Wilson, Payne's instruction would require the jury to acquit if it found that the conspiracy proven varied from the conspiracy charged in the indictment. That

ignores the established principle that a prosecutor may elect to proceed on a subset of the allegations in an indictment and prove a conspiracy smaller than the one alleged. Id. at 865; United States v. Duff, 76 F.3d 122, 126 (7th Cir. 1996). Where a subset of the charged conspiracy is proven, the variance between the indictment and the conspiracy proven is not fatal because the indictment would have adequately notified the defendant of the government's accusations. Wilson, 134 F.3d at 865. Because the proposed instruction suggests that a variance will always be fatal, "the proposed instruction[ ] always will be incorrect." Id. Accordingly, Payne was not entitled to the submission of his proposed instruction because it was not a correct statement of the law.

Moreover, we note that the district court in fact instructed the jury that the government had to prove that Payne was part of the conspiracy charged:

To sustain the charge of conspiracy to distribute or manufacture marijuana, the Government must prove first that the conspiracy as charged in Count 1 existed. And second, that the Defendant knowingly became a member of the conspiracy with intention to further the conspiracy. And third, that an overt act was committed by at least one conspirator in furtherance of the conspiracy.

Transcript Vol. 4, p. 802 (emphasis added). We have held that similar instructions eliminated any prejudice from the failure to give a multiple conspiracy instruction. United States v. Thornton, 197 F.3d 241, 255 (7th Cir. 1999); United States v. Katalinich, 113 F.3d 1475, 1482-83 (7th Cir. 1997).

Payne contends, however, that there was a prejudicial variance between the allegations in the indictment and the proof at trial because the evidence established multiple conspiracies rather than the single conspiracy charged in the indictment. Specifically, Payne asserts that the evidence at trial established four separate conspiracies, which are characterized by the different suppliers of marijuana to Payne and his conspirators. We have repeatedly held that a claim of a variance based upon multiple conspiracies amounts to a challenge to the sufficiency of the evidence supporting the jury's finding that the conspiracy charged in the indictment was proven. United States v. Polichemi, ___ F.3d ___, 2000 WL 898693 *4 (7th Cir. Jul 05, 2000). Therefore, Payne can succeed on his variance claim only if he can establish that the evidence at trial was insufficient to support the jury's finding of a single conspiracy

and that he was prejudiced by the variance. Wilson, 134 F.3d at 865.

The evidence in this case was more than sufficient to support the finding of a single conspiracy. The indictment in this case charged a conspiracy to manufacture and distribute marijuana and included the allegation that Payne would direct couriers to California and/or Texas for the purpose of acquiring marijuana to distribute in Wisconsin, and that he made preparations to establish an indoor marijuana grow operation. Payne grounds his claim of multiple conspiracies on the existence of different suppliers of marijuana. The existence of multiple suppliers in a conspiracy to distribute marijuana in one geographic area, here the Milwaukee area, does not equate with multiple conspiracies. In fact, the indictment itself identifies three different potential sources for the marijuana: Texas, California, and a potential indoor marijuana grow operation. Payne nevertheless attempts to parse out multiple conspiracies based upon the nature of the supplier. Thus, according to Payne, the first conspiracy involves suppliers located in California and Texas, the second conspiracy involves suppliers in Minnesota, the third involves suppliers in the Milwaukee area, and the fourth was the conspiracy named in the indictment. The first obvious defect in this argument is that the indictment in fact identifies the sources in Texas and California, so his first and fourth conspiracies are virtually indistinguishable. More fundamentally, the trial testimony is clear that all of the transactions identified as separate conspiracies by Payne were actually part of the same conspiracy to obtain and distribute marijuana in the Milwaukee area. There was significant overlap in the individuals involved in the Minnesota, Texas, California, and Milwaukee area transactions, as well as substantial interaction among those individuals that was unrelated to those transactions but related to the distribution scheme as a whole. Thus, the individuals who participated in the transactions with those sources did not limit their involvement in the conspiracy to those transactions alone, but rather were involved in a number of ways in other aspects of the distribution scheme in Milwaukee. The use of different sources was simply a reflection of the consistent effort to maximize profits for the single distribution scheme-- whether by increasing quality and thus raising resale price (which motivated the Minnesota transaction and the indoor grow operation) or by decreasing cost and thus increasing profit on resale (which sparked the California and Texas acquisitions).

Therefore, the employment of diverse suppliers did not evidence "separate agreements to effectuate distinct purposes" that are the hallmarks of multiple conspiracies. Katalinich, 113 F.3d at 1482. There was ample evidence here for a jury to find a single conspiracy.

II.

Payne also raises a number of challenges to the court's determination of relevant conduct in sentencing him. First, Payne argues that the court erred in considering acts alleged to have occurred in 1997 and 1998. His sole argument against inclusion of those years in calculating drug weights is that those acts were beyond the scope of the indictment which was limited to the years 1993 to 1996. Relevant conduct, however, by definition can be broader than the conduct underlying the offense of conviction. In determining drug weight, the term "relevant conduct" includes "all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. sec. 1B1.3(a)(2). Payne raises no argument to this court that the conduct in 1997 and 1998 was not part of the same course of conduct (and he would probably have fared poorly had he made such an argument.) His contention that relevant conduct cannot include acts occurring beyond the time frame of the indictment is unsupported by law.

Payne next asserts that the relevant conduct determination is defective because the court erred by including the 2000 empty pots intended for the warehouse grow operation in its drug weight calculations. The court calculated that Payne was responsible for 570 kilograms of marijuana. In reaching that figure, the court accepted the government's figures that break down as follows:

| | |
|---|---|
| 1993 April 1994 | 40 kilograms |
| April 1994 July 1998 | 285 kilograms |
| Chad Nelson attic grow operation | 5 kilograms |
| Minnesota transactions | 40 kilograms |
| 2000 pots = 2000 plants x 100 grams | 200 kilograms |
| TOTAL RELEVANT CONDUCT | 570 kilograms |

Thus, the total figure included 200 kilograms that were attributable to the warehouse grow operation. That figure was reached by equating the 2000 empty pots with an intention to cultivate 2000 marijuana plants. The 2000 marijuana plants are converted under the guidelines to 200 kilograms of marijuana. U.S.S.G. sec. 2D1.1 Background. All parties agree that no actual marijuana plants had yet been

grown at that location. Nevertheless, sec. 2X1.1 of the guidelines instructs the court to apply the base offense level "for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." That section directs the court to sec. 2D1.1 for the calculation of the offense level. Under sec. 2D1.1, the court was required to determine the amount of marijuana for which Payne was responsible under the relevant conduct provisions of sec.sec. 1B1.3 and 2D1.1. Application Note 12 of sec. 2D1.1 provides that

[w]here . . . the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, . . . similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

If the offense involved both a substantive drug offense and an attempt or conspiracy . . . the total quantity involved shall be aggregated to determine the scale of the offense.

Therefore, the court could properly examine the size and capability of the warehouse grow operation in calculating the relevant conduct. The focus is on whether the defendant had the intent to provide the amount of drugs at issue, and whether the defendant was reasonably capable of providing them. See, e.g., United States v. Bertrand, 926 F.2d 838, 845-47 (9th Cir. 1991) (under same guideline provision, court included "potential" methamphetamine production of a lab in calculating drug weight even though one essential ingredient was not present). An examination of the facts reveals that Payne intended to grow a significant amount of marijuana at that location, and had taken substantial steps towards realizing that intention. The government raid on the warehouse revealed preparations for an extensive grow operation there. Construction had begun to transform the area into a space suitable for growing marijuana, including building a wall and assembling light racks and a shelving system with 8 foot fluorescent lights attached. The conspirators had acquired growing lights, a regulator which regulates $CO_2$ for indoor growing operations, a chemical additive for paint that would reduce the penetration of heat through the walls, as well as the 2000 empty pots that were intended to hold marijuana plants. The existence of that equipment supported a finding that Payne intended to establish a grow operation there of a substantial size. Moreover, Payne had

demonstrated his ability to coordinate a successful grow operation with the success of the attic grow operation undertaken by co-conspirator Nelson at Payne's direction. Nelson was involved in the preparations at the warehouse as well. Therefore, we have here evidence that Payne intended to grow marijuana plants at the warehouse, that he had the physical space and the equipment necessary to begin that operation, and that he possessed the know-how, through Nelson, to accomplish that task. Those facts support a finding to a reasonable certainty that Payne intended to grow marijuana plants there and was reasonably capable of doing so.

We need not consider whether the court, in determining relevant conduct, could properly include all 2000 pots as representing 2000 marijuana plants (and thus 200 kilograms). Payne falls within the sentencing range of 121-151 months if he is responsible for 400 to 700 kilograms of marijuana. U.S.S.G. sec. 2D1.1(c). It is undisputed that 370 of the total kilograms were attributable to sources other than the intended warehouse operation. The only question, then, is whether the court could properly attribute 30 kilograms to that warehouse operation. We find no error in such a conclusion. If even 15%, or 300, of the 2000 empty pots were to be used, then the 30 kilogram figure is met. The equipment found at the warehouse as well as the past experience in growing marijuana allowed the court to find that Payne intended to grow at least 300 marijuana plants at that location, and that he had the capability to do so. Accordingly, the court did not err in determining the guideline range for sentencing and in sentencing Payne to the low end of that range, 121 months.

Because Payne was sentenced to 121 months under the guidelines, we need not consider Payne's objections to the 10-year mandatory minimum sentence held applicable to him under 21 U.S.C. sec. 841(b). Because his guideline range was greater than the mandatory minimum, that provision was not applied to him and did not affect his sentence in any way.

Finally, Payne also complains that the court erred in increasing his offense level by four levels pursuant to U.S.S.G. sec. 3B1.1(a) based upon its determination that he maintained a supervisory and leadership role in the conspiracy. This argument is without merit. We would have to reject the testimony of virtually every other participant in this conspiracy in order to reject the court's conclusion that he acted in a leadership and supervisory role. The consistent testimony is that Payne was directing the actions of others in the acquisition and

distribution of drugs and in the collection of the proceeds. The court's finding is well-supported by the testimony in this case, and we find no clear error. See United States v. Hardemon, 188 F.3d 843, 851 (7th Cir. 1999) (decision to apply an adjustment for role in the offense is reviewed for clear error).

For the above reasons, we find no reversible error in the conviction or sentence. The decision of the district court is affirmed.