**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Donovan A. WEISE, Defendant–
Appellant.**

No. 99–4295.

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 2001.
Decided May 22, 2001.

Before POSNER, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Donovan Weise was convicted after a jury trial of conspiracy to import cocaine, in violation of 21 U.S.C. §§ 963, 952(a), and was sentenced to 121 months' imprisonment. On appeal Weise challenges the district court's calculation of the drug quantity attributable to him under § 2D1.1(a)(3) of the sentencing guidelines. We affirm.

In December 1997 Weise's codefendant, John Calhoun, traveled to Jamaica and hired two individuals named Fletch and Bobby to arrange the transportation of one kilogram of cocaine from Jamaica to Indianapolis. Weise was present during these negotiations but did not actively participate.

In January 1998 unidentified couriers transported the kilogram of cocaine to Miami. When they refused to take it any further, Fletch contacted Weise, who then personally went to Miami, picked up the cocaine, and delivered it to Calhoun in Indianapolis. At that point Weise suggested that Calhoun deal exclusively with him from then on and leave Bobby and Fletch out of any future deals. Calhoun agreed and gave Weise money to purchase more cocaine. Calhoun later sold one half of the first shipment to a John Hulick.

In April and June 1998, Weise's couriers successfully transported two more shipments of cocaine, totaling approximately one kilogram, from Jamaica to Indianapolis. Weise's luck ran out in July 1998, however, when Alicia Rivers, one of his couriers, was arrested by airport customs officials in Atlanta. At the time of her arrest, Rivers was carrying approximately two kilograms of cocaine, only one of which was intended for Calhoun. The other was destined for Hulik, apparently as a result of a separate agreement he had entered into with Weise. According to Calhoun's testimony, he had no knowledge of this agreement and was surprised when he heard that an extra kilogram of cocaine had been seized in Atlanta.

In his presentence report, the probation officer recommended that Weise be held responsible for all four of the above transactions, totaling approximately four kilograms of cocaine and resulting in a base offense level of 30. Weise objected to this recommendation, arguing *inter alia* that the cocaine he delivered in January 1998 should not be included in his offense level calculation because "that cocaine was received outside of any agreement that [Weise] and Mr. Calhoun had at that time," and that only one of the two kilograms involved in the July 1998 shipment should be counted because Calhoun "was purchasing only one kilogram of that and had only agreed to one kilogram." The district court rejected both of these contentions. It first reasoned that the January 1998 transaction was properly included in calculating Weise's base offense level because the exclusive agreement later entered into by Weise and Calhoun was merely "a modification or variation on the underlying conspiracy." The court further stated that "[e]ven if Mr. Weise's role was

only transporting [the January 1998 shipment] from Florida, its origin was a matter of importation within the scope of the conspiracy." With regard to the July 1998 transaction, the court determined that Weise was responsible for both kilograms of that shipment because, although "Mr. Calhoun had only ordered one of those, the other kilogram ... regardless of where ultimately it was going to go ... was part of the overall conspiracy to import cocaine from outside this country."

In sum, the court concluded that all four kilograms of cocaine were attributable to Weise, stating that:

> [T]he conspiracy that is alleged and that was proven ... included the cocaine that was included in the overt acts of the indictment and as referred to in the offense conduct portion of the presentence report and all of the, at least roughly four kilograms of cocaine were within the scope of that conspiracy and reasonably likely to have been known of by Mr. Weise because he had direct hands-on involvement with those, at least that quantity of cocaine. [T]his defendant is responsible for at least four kilograms of cocaine as having been reasonably foreseeable to him and part of the overall conduct or common scheme and plan of the conspiracy.

The court then sentenced Weise to 121 months' imprisonment, the lowest possible sentence within the applicable guideline range.

■ This court reviews a district court's calculation of drug quantities for clear error and will reverse only if after reviewing the record it is left with the firm and definite conviction that a mistake has been made. *United States v. Guerrero–Martinez*, 240 F.3d 637, 640 (7th Cir.2001). On appeal Weise first maintains that he is not responsible for the kilogram of cocaine that he delivered in January 1998 because: (1) the agreement to deliver the first kilogram of cocaine "preceded the formation of the charged conspiracy and constituted a single buy-sell agreement with Bobby and Fletch hiring Weise to be a courier after the cocaine was stalled in Miami," and (2) there is "no credible evidence that the first kilo was imported from Jamaica." The record, however, does not support either of these contentions. First, the trial testimony establishes that the January 1998 transaction was part of the charged conspiracy: Weise was present during Calhoun's initial negotiations with Bobby and Fletch; he was then called upon to assist with the delivery once problems arose with the couriers in Miami; and he personally went to Miami, picked up the cocaine, and delivered it to Calhoun in Indianapolis. The district court reasonably concluded from this that Weise had joined the conspiracy from its onset and that the exclusive agreement later entered into by Weise and Calhoun was merely "a modification or variation on the underlying conspiracy." *See United States v. Castillo*, 148 F.3d 770, 774 (7th Cir.1998) ("One means by which the government can prove that a defendant joined the conspiracy is by combining the acts or presence of the defendants with other evidence indicating that the presence or act was intended to advance the ends of the conspiracy.") (internal quotations and citations omitted).

■ With regard to Weise's contention that the cocaine did not come from Jamaica, the trial testimony shows that Calhoun went to Jamaica in December 1997, negotiated to have one kilogram of cocaine delivered to the United States, paid for it in Jamaica, and saw what was alleged to be the cocaine in Jamaica. One kilogram of cocaine was then delivered to Calhoun in January 1998 as a result of these negotiations. A reasonable jury could easily conclude from this that the cocaine originated in Jamaica. Accordingly, the district court's conclusion that "[t]here is no point

of origin within the United States for any of the cocaine, not even the first load" is not clearly erroneous.

▆ Furthermore, even assuming the truth of Weise's allegations–that his role was limited to transporting the cocaine from Miami to Indianapolis and that the cocaine did not come from Jamaica–the January 1998 transaction would still be attributable to him as relevant conduct under § 1B1.3(a)(2) of the guidelines. Weise does not seem to recognize that "relevant conduct" by definition can be broader than the conduct underlying the offense of conviction and includes all acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *United States v. Payne*, 226 F.3d 792, 796 (7th Cir.2000). Here, all four of the transactions involved common accomplices, common purpose, and similar modus operandi–factors suggesting the presence of a common scheme or plan–and they were sufficiently similar, regular, and close in time to warrant a finding that they were part of the same course of conduct. U.S.S.G. § 1B1.3, comment (n.9); *United States v. Zehm*, 217 F.3d 506, 511 (7th Cir.2000). In short, the record clearly supports the district court's conclusion that the January 1998 transaction was "part of the overall conduct or common scheme and plan of the conspiracy," and Weise does not argue otherwise.

▆ Weise also contends that one of the two kilograms of cocaine involved in the July 1998 transaction should not have been included in calculating his base offense level because the "second kilo … was not part of the charged conspiracy [but] was intended for Hulick, with whom Weise had, unbeknownst to Calhoun, made a separate and distinct agreement." Again, however, Weise fails to comprehend that relevant conduct encompasses all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." And Weise has no credible argument that importation of the second kilogram was not part of the same course of conduct as importation of the first, because the two kilograms were part of a single shipment. *Cf. United States v. Cedano–Rojas*, 999 F.2d 1175, 1181 (7th Cir.1993) (drug transactions were part of the same course of conduct where they involved the same persons, similar amounts of cocaine, same location, and similar method of delivery). Thus, even assuming that the transaction between Weise and Hulik was not part of the offense of conviction, Weise would nonetheless be responsible for it as relevant conduct under § 1B1.3(a)(2). *See United States v. Rivera*, 6 F.3d 431, 445 (7th Cir.1993) (evidence supported district court's finding that drug transactions were part of the same course of conduct even if some deliveries were made in furtherance of a different conspiracy).

For the above reasons, the judgment of the district court is AFFIRMED.